UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| OPAL R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1699-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Opal R. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 15).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 12. Plaintiff also filed a reply brief. *See* ECF No. 14. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 12) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for SSI on December 26, 2017, alleging disability beginning December 26, 2017 (the disability onset date), due to panic disorder, mixed anxiety depression disorder, bipolar affect, asthma, post-traumatic stress disorder ("PTSD"), and obsessive compulsive disorder. Transcript ("Tr.") 15, 142-47, 158. Plaintiff's claim was denied initially on

April 6, 2018, after which she requested an administrative hearing. Tr. 10, 80, 103. On October 7, 2019, Administrative Law Judge Anthony Dziepak (the "ALJ") conducted a video hearing from Lawrence, Massachusetts. Tr. 15, 32-67. Plaintiff appeared and testified in Buffalo, New York, and was represented by Zachary Zabawa, an attorney. Tr. 15. Elizabeth C. Laflamme, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id.*

The ALJ issued an unfavorable decision on October 30, 2019, finding that Plaintiff was not disabled. Tr. 15-28. On September 29, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's October 30, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his October 30, 2019 decision:

1. The claimant has not engaged in substantial gainful activity since December 26, 2017, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: attention deficit hyperactivity disorder ("ADHD"); depressive disorder; and anxiety-related disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform a range of medium work as defined in 20 CFR 416.967(c),[1] including an ability to lift/carry fifty pounds occasionally and twenty-five pounds frequently, sit for six hours total in an eight-hour workday, and stand/walk for six hours total in an eight-hour workday. However, she is limited to performing simple repetitive work tasks in a non-assembly line type production-paced work setting, involving no public interaction and no team/tandem collaborative type work with coworkers. The claimant is able to appropriately interact with supervisors, make simple work-related decisions (*e.g.*, understanding the need to replenish supplies when they run out), and adapt to simple changes in the routine work setting (*e.g.*, the temporary relations of workstation within the same facility).

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on February 18, 1983 and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she is determined to also be able to do sedentary and light work. 20 CFR 416.967(c).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 26, 2017, the date the application was filed (20 CFR 416.920(g)).

Tr. 15-28.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on December 26, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 28.

## ANALYSIS

Plaintiff asserts two points of error. Plaintiff first argues that the ALJ impermissibly mischaracterized evidence and used his mischaracterization to support his determination. *See* ECF No. 10-1 at 1, 9-12. More specifically, Plaintiff argues that the ALJ inappropriately suggested that therapist Megan Swanson Ms. Swanson") did not provide a functional opinion due to her lack of support of Plaintiff's disability claim, and the ALJ's assertion that Plaintiff received no mental health treatment prior to February 2018 was a mischaracterization. *See id*. At issue with respect to Ms. Swanson is that she completed a mental residual functional capacity questionnaire on October 2, 2019, but she declined to provide any opinion as to Plaintiff's mental functional limitations. *See* Tr. 823-27. Plaintiff next argues that the ALJ erred because he failed to attempt to fill an obvious gap in the record.  *See id*. at 1, 12-14. According to Plaintiff, counseling records from Ms. Swanson and other mental health treatment records are missing from the record, and the ALJ made no attempt to obtain them. *See id*.

The Commissioner argues in response that: (1) the ALJ appropriately evaluated the record evidence and did not mischaracterize the evidence to inappropriately suggest that Ms. Swanson did not provide a functional opinion due to her lack of support of Plaintiff's disability claim; and

5

(2) the ALJ did not substitute his judgment for the medical evidence in the case and properly developed the record. *See* ECF No. 12-1 at 12-20. Further, argues the Commissioner, the ALJ did not mischaracterize the evidence but simply reported what Ms. Swanson stated in her assessment in the context of analyzing and considering the medical evidence, and it is Plaintiff who mischaracterizes the ALJ's analysis. *See id*. at 10-12.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ appropriately analyzed the opinion evidence, including Ms. Swanson's medical source statement along with the opinions of psychiatric consultative examiner Susan Santarpia, Ph.D. (Dr. Santarpia"), and state agency psychological consultant T. Bruni, Ph.D. ("Dr. Bruni"), as well as Plaintiff's treatment records, her unremarkable mental status examinations, and her activities of daily living, and reasonably concluded that Plaintiff was capable of performing a range of simple, repetitive, and unskilled work, with no public interaction and no collaborative work with coworkers. Accordingly, the Court finds that the ALJ's RFC determination was supported by substantial evidence.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20

C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and

synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed her application on December 26, 2017, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or

prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

9

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's finding that Plaintiff retained the capacity for a range of simple, repetitive, and unskilled work, with no public interaction and no collaborative work with coworkers. Tr. 23-26.  *See* 20 C.F.R. §§ 404.1527, 416.927.

Plaintiff first argues that the ALJ mischaracterized the opinion evidence from Ms. Swanson. *See* ECF No. 10-1 at 9-12. As noted above, Ms. Swanson completed a mental residual functional capacity questionnaire in October 2019 but declined to provide any opinion as to Plaintiff's mental functional limitation. *See* Tr. 823-27. Rather, Ms. Swanson repeatedly stated that she was "unable to answer" the questions because she "[did] not complete mental status

exams" and Plaintiff would need to go to "psych or neuropsych" for any such assessments. *See id.* As such, the section of the form intended to provide an assessment of Plaintiff's mental functioning is useless. Plaintiff argues that the ALJ used this information (or more accurately, this lack of information) to inappropriately suggest that Ms. Swanson's inability to provide a functional opinion was due to her lack of support of Plaintiff's disability claim. *See* ECF No. 10-1 at 10. Contrary to Plaintiff's assertions, however, the ALJ did not "mischaracterize," "infer," or otherwise "inappropriately suggest" that Ms. Swanson did not provide a functional opinion due to her lack of support of Plaintiff's disability claim. *See id.*

Plaintiff alleges that the ALJ's citation to the statement completed by Ms. Swanson inferred incorrect "subtext" and mistakenly conveyed that Ms. Swanson "did not think that Plaintiff was disabled." *See* ECF No. 10-1 at 10. However, the Court finds no inference or mistakenly conveyed subtext in these statements. Rather, the ALJ accurately cited Ms. Swanson's statements almost verbatim and simply did as he was required to do under the regulations by assessing Ms. Swanson's relationship with Plaintiff (including the length, frequency, and extent of treatment) and considering the supportability of Ms. Swanson's statements in the context of her treatment relationship with Plaintiff. *See* 20 C.F.R. § 416.920c(a)-(c) (2017).

As the ALJ noted, Ms. Swanson was providing "CBT[2] treatment" and stated that she had met with Plaintiff on only three occasions (April 24, 2018, March 28, 2019, and July 10, 2019). Tr. 26, 823. Ms. Swanson added that Plaintiff had "poor attendance" with treatment. *See id.* Next, the ALJ observed that: "Therapist Swanson further noted that she was unable to provide any opinion on functional limitations as she did not complete any mental status examinations on the

---

[2] According to the American Psychological Association ("APA") website, CBT is cognitive behavioral therapy. CBT treatment usually involves efforts to change thinking and/or behavioral patterns. Typically, the psychologist and patient work collaboratively to develop an understanding of the problem and to develop a treatment strategy. APA website, https://www.apa.org/ptsd-guideline/patients-and-families/cognitive-behavioral

claimant and deferred such ratings to a psychiatrist or neuropsychiatrists." Tr. 26. The ALJ then went on to state that "this impairment questionnaire does not provide any insight into the claimant's maximum mental functional capacities," but "the statement [was] nevertheless notable for the claimant's own medical source declining to provide a substantive assessment on work related limitations in support of her claim for benefits." Tr. 26.

Contrary to Plaintiff's allegations, the ALJ did not mischaracterize Ms. Swanson's statement or infer some subtext "to support his determination that Plaintiff was not disabled." *See* ECF No. 10-1 at 10. Further, the ALJ did not infer that Ms. Swanson "did not think that Plaintiff was disabled" (*see* ECF No. 10-1 at 10), as Plaintiff argues. Tr. 16, 823. Rather, the ALJ simply considered Ms. Swanson's statements in the context of his duty to analyze the medical evidence and noted the lack of insight from Ms. Swanson's statements. Tr. 26. Furthermore, the Court agrees with the ALJ that it was indeed "notable" that a treatment provider completed a mental residual functional capacity questionnaire that did not render any opinion about Plaintiff's mental residual functional capacity.

Plaintiff's argument fails for another reason—nothing in the ALJ's decision indicates that he relied on the fact that Ms. Swanson did not render an opinion to reach his finding that Plaintiff was not disabled. Tr. 20-27. He simply acknowledged the lack of insight provided by Ms. Swanson's statements. Tr. 26. Such analysis is well within the ALJ's discretion. *See Rutherford v. Schweiker*, 685 F.2d 60, at 62 (2d. Cir. 1982) (Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld). Accordingly, the Court finds no error in the ALJ's analysis.

Plaintiff also argues that the ALJ erred by suggesting that "Plaintiff received no mental health treatment whatsoever between March 2015 and January 2018." *See* ECF No. 10-1 at 11-12.

Plaintiff appears to ignore the actual text of the ALJ's decision—the ALJ made no such suggestion or implication. *See* Tr. 23. Contrary to Plaintiff's assertion, the ALJ properly considered the lack of mental health treatment in his analysis of the consistency of Plaintiff's subjective complaints with the objective record. *Id*. For example, the ALJ noted that Plaintiff received outpatient mental health services from Spectrum Human Services ("Spectrum") from July 2008 to July 2009 (Tr. 216-52, but those records did not contain any mental status examination findings, and Plaintiff had voluntarily discontinued treatment in July 2009 (Tr., 232-33). Thus, the ALJ reasonably found this factor inconsistent with Plaintiff's allegations of life-long disabling psychiatric impairments. Tr. 23.

Plaintiff also contends that the ALJ mischaracterized the record when he stated that Plaintiff was "seen on at least seven occasions by her then primary care provider Maria T. Andaya, M.D., between March 2015 to January 2018, but none of those medical encounters were specifically related to her psychiatric impairments or associated symptoms, . . ." *See* ECF No. 10-1 at 11 (citing Tr. 23). Again, the ALJ merely summarized the treatment record and reasonably noted that he found this factor "troubling" in light of Plaintiff's gap in psychiatric treatment since July 2009. Tr. 23. As the ALJ explained, these medical reports from Dr. Andaya did not show any evidence of psychiatric abnormalities, and a note from May 2017 indicated that Plaintiff was not receiving any stimulant medications for ADHD. *Id*. The ALJ went on to explain that although Plaintiff established care with another primary care provider in February 2018 and was restarted on antidepressant medications, her physical examinations showed little indication of serious mental functional limitations. Tr. 23, 254, 260, 262, 277, 281.

Thus, contrary to Plaintiff's contention, the ALJ did not suggest that Plaintiff had no mental health treatment at all between March 2015 and January 2018. Rather, the ALJ accurately

summarized Plaintiff's mental health treatment history during that time and appropriately observed that, while Plaintiff alleged disabling mental limitations, she did not pursue any specialist psychiatric treatment during this period, nor did she frequent her primary care provider primarily as a result of her alleged psychiatric limitations, nor did her primary care provider observe significant psychiatric abnormalities in Plaintiff's progress notes. Tr. 23, 254, 260, 261, 262, 277, 279.

Based on the foregoing, it was appropriate for the ALJ to consider Plaintiff's minimal mental health treatment history and sporadic attendance when assessing the limitations resulting from her alleged impairments. *See* SSR 16-3p, 2017 WL 5180304, at *9 (if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, the ALJ may find that the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence in the record); *see also Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) (ALJ appropriately considered claimant's daily activities, non-compliance with medication, and poor attendance in treatment programs when finding her subjective allegations less than fully credible); *Diaz-Sanchez v. Berryhill*, 295 F.Supp.3d 302, 306 (W.D.N.Y. 2018) (plaintiff's failure to seek treatment for an alleged impairment suggests that the associated symptoms and limitations were not serious).

In addition, the ALJ's decision was not based solely on whether Plaintiff sought treatment between March 2015 and January 2018. The ALJ based his RFC determination on the entire record as a whole, including Plaintiff's unremarkable mental status examinations, her minimal and conservative treatment, her activities of daily living, and Dr. Santarpia's March 2018 opinion,

which the ALJ found to be "generally persuasive" based on its supportability and consistency with the other evidence Tr. 25-26, 338.

As the ALJ noted, Dr. Santarpia opined that Plaintiff was capable of handling simple and complex tasks, use reason and judgment to make work-related decisions, interact adequately with supervisors, co-workers, and the public, sustain concentration, perform tasks at a consistent pace, sustain an ordinary routine, and maintain regular attendance at work. *Id*. She further opined that Plaintiff had a mild impairment in regulating her emotions, controlling her behavior, and maintaining her well-being due to ADHD-related distractibility and lack of medication for the same. *Id*. Dr. Santarpia's opinion, therefore, supports the ALJ's RFC determination.

The Court notes that Plaintiff does not challenge the ALJ's finding of Dr. Santarpia's opinion as persuasive, nor does Plaintiff challenge the ALJ's reliance on Dr. Santarpia's opinion in making the RFC determination. *See* ECF No. 10-1 at 9-14. Accordingly, the Court need not address this issue. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

The ALJ also considered Plaintiff's daily living activities when assessing her RFC. Tr. 25. As the ALJ observed, Plaintiff reported she cooked, cleaned, shopped, managed her finances, socialized with friends and family frequently, and spent the majority of the day serving as primary caretaker for her 11-year-old daughter. Tr.25, 330, 337-38. She also reported engaging in leisurely activities including exercise, gardening, reading, using her phone as a computer, using social media, and running errands as needed. *Id*. Thus, the ALJ properly determined that Plaintiff's self-

reported statements and activities demonstrate a level of functionality inconsistent with the level of impairment alleged, providing further support for the ALJ's determination. Tr. 18-23. *See Cowley v. Berryhill*, 312 F. Supp.3d 381 (W.D.N.Y. May 17, 2018).

Based on the foregoing, the ALJ properly based his RFC determination on the record as a whole, including Dr. Santarpia's opinion, the objective medical evidence, Plaintiff's minimal mental health treatment, and her activities of daily living, and there is no merit to Plaintiff's argument that the ALJ mischaracterized the record with respect to Plaintiff's mental health treatment. Accordingly, the Court finds no error.

In her second point of error, Plaintiff argues that the ALJ failed to develop the record and should have made an effort to obtain Plaintiff's therapy records. *See* ECF No. 10-1 at 12-13. In support of her argument, Plaintiff highlights the three instances of treatment noted in Ms. Swanson's statement (Tr. 823); two passing references in the treatment notes indicating that Plaintiff *may* have received counseling or been referred for counseling (Tr. 766, 790); and the fact that Plaintiff was prescribed psychotropic medications by her primary care providers (Tr. 766). *See* ECF No. 10-1 at 12. For the reasons discussed below, Plaintiff's argument is without merit.

A court must first "be satisfied that the ALJ provided plaintiff with a full hearing under the [SSA]'s regulations and also fully and completely developed the administrative record" before it can consider whether substantial evidence supports the ALJ's decision. *Calhoun v. Comm'r of Soc. Sec.*, No. 18-CV-6070-FPG, 2019 WL 1949743, at *3 (W.D.N.Y. May 2, 2019) (citing *Leutung*, 2019 WL 1385847, *3 (quotation marks and citations omitted). Remand is warranted if the ALJ fails to fulfill his duty to develop the record. *Id*. (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ does not have to seek additional evidence. *Id*. (citing *Rosa*, 168 F.3d at 79 n.5). A complete medical history consists of the records and medical sources covering at least the 12 months preceding the month in which the claimant files an application for benefits. *See* 20 C.F.R. 416.912(d); *Bushey v. Colvin*, 607 F. App'x 114, 115 (2d Cir. 2015). The Court finds that the ALJ adequately developed the record in this case, and there are no obvious gaps in the record.

In this case, Plaintiff was represented at the administrative level, and her attorney at the hearing voiced no objection to the evidence that was exhibited into the record. *See* Tr. 35-37. The ALJ also asked Plaintiff's counsel at the hearing if there was anything else that needed to be brought to the ALJ's attention before the hearing "wrapped up," to which Plaintiff's counsel responded, "No." Tr. 66. Furthermore, the ALJ specifically questioned Plaintiff about her mental health treatment providers, and Plaintiff mentioned seeing a "counselor named Megan" and indicated that "all of [her] anxiety meds are through [her] primary care doctor." Tr. 49.

At no point did Plaintiff or her attorney inform the ALJ of any issues relating to obtaining opinion evidence from her providers, or request that the ALJ assist with obtaining the records. Thus, the ALJ owed no heightened duty to Plaintiff, as she and her attorney were well aware of the importance of obtaining opinion evidence, and Plaintiff had the means by which to obtain such evidence. *See Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp. 2d 297, 330 (S.D.N.Y. 2010) ("Courts do not necessarily require ALJs to develop the record by obtaining additional evidence themselves, but often permit them to seek it through the claimant or his counsel." (citations omitted)). Moreover, Plaintiff's attorney did not raise any issue regarding the lack of medical source statements at the hearing, nor did Plaintiff's current counsel raise this issue before the ALJ or to the Appeals Council. *See* Tr. 1-6.

More importantly, an ALJ need not further develop the record "when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" *See Janes v. Berryhill*, 710 F.App'x 33, 34 (2d Cir. Jan. 30, 2018) (summary order (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). *see also Morris v. Berryhill*, 721 F. App'x 25, 27-28 (2d Cir. 2018) (summary order) (explaining that the mere "theoretical possibility" of missing records that might be probative of disability "does not establish that the ALJ failed to develop a complete record"). Here, the record contained detailed contemporaneous treatment records from Plaintiff's primary care provider; records from "NHC" (Neighborhood Health Center), where Ms. Swanson practices (Tr. 753-797); records from Spectrum (Tr. 216-252); Ms. Swanson's responses to a mental residual functional questionnaire (Tr. 823-833); and opinions as to Plaintiff's psychiatric limitations from consultative psychiatric examiner Dr. Santarpia (Tr. 335-340) and from state agency psychological consultant Dr. Bruni, who reviewed Plaintiff's records in April 2018 (Tr. 74-75). Tr. 25-26. Thus, the ALJ possessed sufficient medical evidence to render a decision, and there was no need to obtain additional medical evidence. *Carvey v. Astrue*, 380 Fed. Appx. 50, 51 (2d Cir. 2010) ("because the record evidence was adequate to permit the ALJ to make a disability determination, we identify no merit in Carvey's claim that the ALJ was obligated *sua sponte* to recontact the treating physicians."). Plaintiff's attempts to argue otherwise are meritless.

Furthermore, as previously noted, Plaintiff bears the ultimate burden of proving that she was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It

is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and the objective findings, as well as Plaintiff's significant range of activities, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**. Plaintiff's

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter

judgment and close this case.

   **IT IS SO ORDERED**.


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE